hmg 6.10.25



**U.S. Department of Justice**

*United States Attorney
District of Maryland
Northern Division*

| | | | |
|---|---|---|---|
| *Christine Goo*<br>*Assistant United States Attorney*<br>*Christine.Goo@usdoj.gov* | *Mailing Address:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *Office Location:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *DIRECT: 410-209-4924*<br>*MAIN: 410-209-4800* |



USDC-BALTIMORE
'25 AUG 11 PM 3:41

July 8, 2025

**VIA ELECTRONIC MAIL**
Christina Wong
Assistant Federal Public Defender
Office of the Federal Public Defender – District of Maryland
100 S. Charles St., Tower II, 9th Floor
Baltimore, Maryland 21201
Christina_Wong@fd.org

      Re:    <u>United States v. Tyshawna Davis et. al</u>
                Criminal No. JRR-22-0248

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Tyshawna Davis (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. **If this offer has not been accepted by July 15, 2025 it will be deemed withdrawn.** The terms of the Agreement are as follows:

### Offenses of Conviction

      1.     The Defendant agrees to plead guilty to Counts One and Twelve of the Second Superseding Indictment, which charges the Defendant in Count One with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, and in Count Twelve with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. The Defendant admits that the Defendant is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offenses

      2.     The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Rev. August 2018

Count One – Conspiracy to Commit Wire Fraud

a. That at some point between in or about May 2020 and in or about May 2021, in the District of Maryland, the Defendant and at least one other person entered into an unlawful agreement;

b. The purpose of the agreement was to knowingly execute or attempt to execute a scheme and artifice to defraud or to obtain money by means of materially false and fraudulent pretenses, representations and promises, and to use or cause an interstate wire as charged in the ~~Information;~~ Second Superseding Indictment  EJC 8.11.25

c. The Defendant knowingly and willfully became a member of the conspiracy.

Count Twelve – Aggravated Identity Theft

a. First, that around the date set forth in the Second Superseding Indictment, in the District of Maryland, the Defendant knowingly used, transferred, or possessed a means of identification of another person, C.M., and knew that the means of identification belonged to another actual person;

b. Second, the Defendant used the means of identification during and in relation to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; and

c. Third, the Defendant acted without lawful authority.

Penalties

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1349 | N/A | 20 years | 3 years | $250,000 or twice gross gain/loss | $100 |
| 12 | 18 U.S.C. § 1028A | 2 years consecutive | 2 years consecutive | 1 year | $250,000 | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant

Rev. August 2018

2

returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

   c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

   d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

   e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

   f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

Rev. August 2018

c.  If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.  The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.  If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.  This Office and the Defendant understand, agree, and stipulate to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein, and which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guideline factors:

Count One:

   a.  The parties agree and stipulate that pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(a)(1), the base offense level for Count One (conspiracy to commit wire fraud) is 7.

   b.  A 16-level upward adjustment pursuant to § 2B1.1(b)(1)(I) is warranted because the offense involved a loss of more than $1,500,000, but less than $3,500,000, resulting in an adjusted offense level of 23.

   c.  Two levels are added because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means. *See* U.S.S.G. § 2B1.1(b)(10)(C).

   d.  Two levels are added because the defendant was an organizer or leader of a criminal activity. *See* U.S.S.G. § 3B1.1(c). Before downward adjustments, the adjusted total offense level is 27.

   e.  This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

Rev. August 2018

  f. Accordingly, the resulting ANTICIPATED offense level for Count One, after reduction for acceptance of responsibility, is 24.

Count Twelve:

  g. The parties stipulate and agree that, as to Count Twelve, U.S.S.G. § 2B1.6 and 18 U.S.C. § 1028A(b) apply to the Defendant's offense, resulting in a guideline and statutory sentence of 2 years' imprisonment, which must be consecutive to any sentence imposed for any other count of conviction.

  7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

  8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

  9. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Indictment and Information. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

  10. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

  a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

  b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of

imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

   i.  The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

   ii.  This Office reserves the right to appeal any sentence below a statutory minimum.

  c.  The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Restitution

11.  The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which the parties stipulate is at least $3,296,725. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Forfeiture

12.  The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13.  Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in anything that constitutes money, property, and/or assets

Rev. August 2018

derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including a money judgment in the amount of at least $90,860 representing the proceeds the Defendant obtained from the wire fraud conspiracy.

14. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

17. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule

11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

19.   The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relative to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

20.   This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Kelly O. Hayes
United States Attorney

*Evelyn L. Cusson*
Digitally signed by EVELYN CUSSON
Date: 2025.07.08 15:16:53 -04'00'

Evelyn Lombardo Cusson
John D'Amico
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

Rev. August 2018

7/15/2025
Date

_____
Tyshawna Davis

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

7/15/25
Date

_____
Christina Wong, Esq.
Assistant Federal Public Defender

Rev. August 2018

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Defendant, Tyshawna Davis ("Davis"), born in 1984, was at all relevant times, a resident of Baltimore City, Maryland.

Beginning in May of 2020 and continuing through at least May 2021, in the District of Maryland, Davis engaged in a conspiracy and scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, in connection with an unemployment insurance scheme. Specifically, Davis obtained personal identifiable information ("PII") of Identity Victims, and using the Identity Victims' PII, submitted false and fraudulent claims for unemployment insurance to the Maryland Department of Labor ("MD-DOL"). Davis and her co-conspirators, including Tiia Woods ("Woods"), Donna Jones ("Jones"), and Duane Watts ("Watts"), used the unemployment insurance benefits, which were designated to assist persons who were unemployed or underemployed due to the COVID-19 national emergency, for their own personal enrichment.

For the purpose of executing and attempting to execute the conspiracy and scheme to defraud, Davis knowingly and willfully transmitted and caused to be transmitted by means of wire communications, in interstate commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1349.

Davis admits that the facts below show that she was an organizer or leader of a criminal activity, along with her co-defendant Tiia Woods. Davis further admits that her scheme was sophisticated due to her use of a virtual private network ("VPN") when submitting fraudulent unemployment insurance claims to MD-DOL, the use of various identification documents issued to the purported claimants, the fabrication of documents submitted in support of unemployment insurance claims including statements from CashApp, backdating of claims to maximize benefits, the direction of Bank of America ("BOA") prepaid VISA debit cards to various physical addresses controlled by Davis and the co-conspirators, and the creation of a P.O. Box in the name of a limited liability company to receive BOA prepaid VISA debit cards issued in the name of Identity Victims by MD-DOL.

### Background Regarding Unemployment Insurance

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering from the economic consequences of the Coronavirus Disease 2019 ("COVID-19"). The CARES Act authorized increased unemployment insurance ("UI") benefits. UI benefits have historically been a state and federal program that provided monetary benefits to eligible workers. Although states

Rev. August 2018

11

administered their respective UI programs, they did so in accordance with federal laws and regulations. Generally, UI benefits were paid weekly based on a percentage of wages earned over a time period.

After states determined that a person was eligible for benefits, UI payments were often made by either (a) direct deposit to a financial institution account or (b) by crediting the benefits to a financial account that was linked to a prepaid debit card. The beneficiary could then use the prepaid debit card to withdraw cash at ATMs or pay for goods and services via point-of-sale transactions. The CARES Act expanded states' ability to provide UI benefits for many workers impacted by COVID-19, including self-employed workers or independent contractors, who would not normally be eligible for UI benefits.

In Maryland, those seeking UI benefits submitted applications online. Applicants had to answer specific questions to establish eligibility to receive UI benefits, including their name, Social Security Number ("SSN"), and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially unemployed, or unable to work. The MD-DOL relied upon the information in the application to determine UI benefits eligibility. Once an application was provided, the MD-DOL typically distributed state and federal UI benefits electronically, often through a direct deposit to a bank account.

Until in or around April 2021, if MD-DOL approved a UI claim, BOA created and mailed a BOA Prepaid VISA debit card with the claimant's name on it to the claimant based on information received from MD-DOL. MD-DOL would subsequently authorize the electronic application of UI benefits to the debit card and continue to do so on a periodic basis if the claimant continued to file for benefits.

<u>The Conspiracy and Scheme to Defraud the MD-DOL</u>

Beginning in or around May 2020 through in or around May 2021, Davis, in coordination with Woods, Jones, and Watts, and other persons known and unknown, submitted false and fraudulent UI applications that contained false and fraudulent representations concerning the Identity Victims' contact information and addresses, as well as the Identity Victims' employment status, work history, occupation, and eligibility for benefits. Many of the false and fraudulent UI applications included fabricated statements from Cash App to support the claims submitted to MD-DOL. Davis created an email account, moneyworks363@yahoo.com, which Davis and her co-defendants listed or caused to be listed as the contact email on more than 150 fraudulent claims for unemployment insurance benefits submitted to MD-DOL. Davis also rented P.O. Box 7589, in Baltimore, Maryland, which was used to receive BOA prepaid VISA debit cards issued in the names of Identity Victims.

Davis directed co-conspirators Jones and Watts to obtain PII, [for claims that needed additional verification] such as driver's licenses, Social Security cards, and/or birth certificates for Identity Victims, including Identity Victim 1, Identity Victim 2, Identity Victim 3, Identity Victim 4, and Identity Victim 5, which Davis submitted or caused to be submitted to MD-DOL in connection with false and fraudulent UI applications in the names of the Identity Victims.

The claims were funded by MD-DOL via BOA prepaid VISA debit cards bearing the names of the Identity Victims, as follows:

| Victim | Claim Funded | PII |
|---|---|---|
| Identity Victim 3 | $11,040 | Social Security card, birth certificate, Maryland identification card |
| Identity Victim 1 | $17,860 | Social Security card |
| Identity Victim 5 | $38,660 | Social Security card, birth certificate, Maryland identification card |
| Identity Victim 2 | $11,538 | date of birth, social security number |
| Identity Victim 4 | $30,648 | Social Security card, driver's license |

In total, Davis' Internet Protocol ("IP") address logged on to the Beacon system, the online portal for submitting, accessing, and certifying UI claims in Maryland, more than 1,500 times between May 2020 and January 2021. During these logins, Davis accessed claims involving at least 60 different individuals who were real persons. In furtherance of the scheme, Davis and her co-conspirators caused the MD-DOL to disburse more than $1.8 million in UI benefits to BOA prepaid Visa debit cards that the MD-DOL believed were controlled by the UI applicants, including the Identity Victims, thereby causing interstate wire communications. Davis caused interstate wire communications which began and ended in Maryland when she applied for UI benefits, modified UI claims within the MD-DOL system, and caused MD-DOL to disburse UI benefits. Finally, Davis engaged in ATM withdrawals, and other financial transactions, including financial transactions that caused interstate wire communications that began and ended in Maryland.

Davis provided lost wage documentation to MD-DOL in support of a false and fraudulent UI claim on behalf of Identity Victim 1 on or about July 2, 2020. The claim, bearing identification number 11601772, included the name and social security number of Identity Victim 1, who Davis knew to be a real person, without lawful authority.

<u>Davis Directs the UI Fraud Conspiracy</u>

Davis directed the co-conspirators as to the actions to take in furtherance of the conspiracy, communicating via text messages what her instructions were to others pertaining to individual purported claimants, the approved benefits, and how the benefits would be divided, including the amount Davis would keep for herself.

For instance, on June 27, 2020, Davis and Watts texted regarding purported claimant K.D. as follows:

Davis:    $15,630 total
          Portion I would charge including weekly fees is $5,400

          Petty

Watts:    Petty shit wtf is the discount u greedy brah

|          |                                                                                                                                                                                                                 |
|----------|---|

It's all good I understand

Davis: Text me when you not busy because you didn't hear anything that I said. I was telling you what to tell the person that is getting the card.

Watts: Naw we getting the card fuck that

Davis: I know that. Just text me when you are free.

Watts: So basically I can tell them its 9000 when they get the card right

Davis: By the time we finish pulling the money off another payment would post so it would be a little more than that. I don't like texting because I don't want to confuse you or to be misunderstood.

Davis texted Watts on July 7, 2020, regarding several purported claimants' benefits, including Davis' fee for each claim:

Davis: 1. D.'s [redacted] card will be mailed out today.

2. T.'s [redacted] card will be mailed out today.

3. No update on C. [redacted] (will check again later in the evening)

4. No update on A. [redacted] (will check again later in the evening)

5. K.W. [redacted] processed as a Reg UI claim will check for update status

6. S.D. [redacted] is done waiting for processing to start. The amount is $17,970 my fee $6,000

7. J.A. [redacted] is done waiting for processing to start. The amount is $18,545 my fee $6,000.

8. All 3 people I did today for you will be going to the 1400 W Lombard St address.

I will text you if I have any updates to give.

Please respond to let me know you got this message and the content of it is clear.

Watts: Smmfh

Similarly, on or about November 8, 2020, Jones checked with Davis regarding the weekly amounts for two purported claimants, and exchanged the following messages:

Jones:   So the weekly was ok?

Davis:   Who's?

Jones:   M. [redacted] and J. [redacted]

Davis:   I can't remember. I'm not home. I have at [sic] 35 weeklys that I do so I can't remember off hand. I can let you know when I get in and start checking the system

When Jones provided the Social Security card and Maryland Driver's License for J.W. on October 19, 2020, Davis responded, "The card needs to be signed" to be submitted in support of the claim.

## Total Losses Caused by the Defendant

In total, Davis and her co-conspirators submitted approximately 150 fraudulent applications in the names of purported claimants and Identity Victims. Because of Davis' actions in the course of the conspiracy and scheme to defraud, the MD-DOL, BOA, and multiple individuals lost at least $3,296,725, which was reasonably foreseeable to Davis.

In addition, Davis was observed on ATM surveillance footage approximately 118 times making withdrawals using BOA prepaid VISA debit cards that were issued in the names of other persons including Identity Victims. The total amount of funds associated with those ATM withdrawals was at least $90,860. Further, Davis submitted or caused the submission of UI claims on behalf of Identity Victims, as evidenced by the inclusion of the moneyworks363@yahoo.com email address established by Davis and/or the use of Davis' IP address in submitting, checking, and/or certifying the claims via the Beacon system. In total, by email address, IP address, ATM withdrawals, toll records, and/or mailing address for BOA prepaid VISA debit cards, Davis is connected to approximately 134 purported claims which were funded in the amount of $2,377,840.

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7/15/2025
Date

Tyshawna Davis

I am Ms. Davis' attorney. I have carefully reviewed every part of this agreement, including the sealed supplement with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

7/15/25
Date

Christina Wong, Esq.
Assistant Federal Public Defender