IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. JRR-22-248 |
| | * | |
| TYSHAWNA DAVIS, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America hereby submits this memorandum in aid of sentencing. As set forth below, the government respectfully requests that the Court sentence the Defendant, Tyshawna Davis ("Davis" or "Defendant") as follows:

- A total sentence of 65 months imprisonment, consisting of 41 months for Count One (Conspiracy to Commit Wire Fraud), followed by a 24-month sentence for Count 12 (Aggravated Identity Theft), consecutive to the sentence for Count One;

- Supervised Release for a period of three years;

- A forfeiture money judgment of $90,860, consistent with the parties' plea agreement; and

- A restitution Order in the amount of $3,296,725.

### I.    INTRODUCTION

In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act to provide emergency financial assistance to numerous Americans suffering from the economic consequences of the Coronavirus Disease 2019 ("COVID-19"). The CARES Act expanded a state's ability to provide unemployment insurance ("UI") benefits to those impacted by COVID-19, including self-employed workers or independent contractors, who were not typically eligible for such benefits. Shortly thereafter, Davis, and her co-defendants, took advantage of those expanded eligibility requirements and engaged in an expansive

1

unemployment insurance ("UI") fraud scheme that caused approximately $3,296,725 in losses. Davis, along with co-defendant Tiia Woods ("Woods"), was a leader and organizer of this fraud scheme, which submitted approximately 150 fraudulent UI applications to the Maryland Department of Labor (MD-DOL). Davis was personally connected to more than 130 purported UI claims, including through email address, IP address, ATM withdrawals, toll records, and/or the mailing address used. Those claims ultimately caused losses of more than $2.3 million.

## II.    PROCEDURAL HISTORY

On May 8, 2025, a second Superseding Indictment was returned charging Davis with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 (Count 1), Wire Fraud, in violation of 18 U.S.C. § 1343 (Counts 2, 4, 10, 11), and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (Counts 12, 14, 18). ECF No. 181. On August 11, 2025, Davis entered a guilty plea to Counts 1 and 12 of the Second Superseding Indictment. ECF No. 196.

## III.   APPLICABLE SENTENCING GUIDELINES

The government, the Defendant, and U.S. Probation Office stipulate that the following sentencing guidelines apply:

### A. Offense Level

Count One (Conspiracy to Commit Wire Fraud)

- The applicable base offense level is **7**, pursuant to U.S.S.G. § 2B1.1(a)(1).
- A **16-level** increase applies because the loss is more than $1,500,000 but less than $3.5 million, pursuant to U.S.S.G. § 2B1.1(b)(1)(H).
- A **2-level** increase applies because the offense involved sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(10)(C).
- A **2-level** increase applies because Davis was an organizer, leader, manager, or supervisor of the criminal activity, pursuant to U.S.S.G. § 3B1.1(c).

- A **2-level** decrease applies because of prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct, pursuant to U.S.S.G. § 3E1.1(a).

- A **1-level** decrease applies because the Defendant has timely notified authorities of her intention to plead guilty, pursuant U.S.S.G. § 3E1.1(b).

Count Twelve (Aggravated Identity Theft)

Pursuant to U.S.S.G. § 2B1.6, the term of imprisonment to be imposed as to Count Twelve is the term of imprisonment required by 18 U.S.C. § 1028A, which is two years, to be imposed consecutive to any other sentence.

The government agrees with Probation's calculations, that based on Davis's Offense Level of 24 and Criminal History Category of I, the guidelines range for Count 1 is 51 to 63 months imprisonment. Because Count 12 requires the imposition of a 24-month consecutive sentence, Davis's guidelines range is adjusted to 75 months to 87 months imprisonment.

IV. **SENTENCING FACTORS**

The government submits for the reasons listed below that its requested sentence of 65 months of incarceration is sufficient, but not greater than necessary, to satisfy the purposes set forth in 18 U.S.C. § 3553(a).

A. **Nature And Circumstances of The Offense**

As outlined above, Davis, along with her co-conspirators, repeatedly took advantage of programs meant to assist those in need, during a global pandemic, and did so for their own selfish purposes. While most individuals were sheltering in place, taking care of loved ones, and often making tough financial sacrifices, Davis, along with Woods, organized and directed this fraud scheme that fraudulently obtained over millions of dollars in unemployment insurance benefits. Beginning in or around May 2020 and through in or around May 2021, Davis in coordination with Woods, Donna Jones ("Jones"), and Duane Watts ("Watts"), submitted UI

applications that contained false and fraudulent representations concerning Identity Victims' contact information, employment status, work history, occupation, and eligibility for benefits.

Specifically, Davis obtained personal identifiable information ("PII") of Identity Victims and used their PII to submit false and fraudulent claims to MD-DOL for UI benefits. ECF No. 197 at 11. Davis directed her co-conspirators to obtain PII, such as driver's licenses, social security cards, and/or birth certificates, for Identity Victims' claims that needed additional verification, including Identity Victim 1, Identity Victim 2, Identity Victim 3, Identity Victim 4, and Identity Victim 5. As a result, the MD-DOL funded Identity Victim 1's claim for $17,860, Identity Victim 2's claim for $11,538, Identity Victim 3's claim for $11,040, Identity Victim 4's claim for $30,648, and Identity Victim 5's claim for $38,660. ECF No. 197 at 12-13.

Throughout the conspiracy, Davis also significantly utilized Beacon, MD-DOL's online portal for submitting, accessing and certifying UI claims in Maryland, to further the criminal conspiracy. Between May 2020 through January 2021, Davis's Internet Protocol ("IP") address logged onto the Beacon system more than 1,500 times and accessed claims involving at least 60 different real persons. ECF No. 197 at 13. For her role in submitting, processing, and managing the claims in Beacon, Davis would collect fees for the respective claims. Below is a text message that Davis sent Watts regarding several purported claimants' benefits, including Davis's fee for each claim:



See ECF No. 197 at 14.

As a part of managing and processing the respective UI claims, Davis also completed numerous weekly certifications for the purported claimants. As detailed in the plea agreement, there is a text message exchange between Davis and Jones where Jones asks if Davis completed weekly certifications for two purported claimants. In response Davis, stated the following:



*See* ECF No. 197 at 14-15.

Finally, Davis also completed ATM withdrawals on behalf of the criminal conspiracy. ATM Surveillance footage observed Davis approximately 118 times making withdrawals using a Bank of America prepaid VISA debit card that was issued in the names of other persons, including identity victims. The total amount of funds associated with those ATM withdrawals was at least $90,860. ECF No. 197 at 15.

Given Davis's multifaceted role, her leadership, and the duration of the criminal conspiracy, this was not an isolated exercise of bad judgment over one night, one weekend, or even a month. Rather, Davis served a prominent role, in causing the loss of more than $3 million worth of COVID-19 CARES Act funds, over an extended period of time, during a national crisis. Indeed, the nature and circumstances of the offense are very serious.

### B. History and Characteristics of the Defendant

Next, this Court should consider the Defendant's history and characteristics. Based on the Pre-Sentence Investigation Report ("PSR"), ECF No. 226, the government is cognizant that Davis endured numerous hardships throughout her childhood. Nevertheless, Davis overcame numerous challenges to obtain her associate's degree from Howard Community College in 2021,

applied for and was accepted to Columbia University, and maintained steady employment dating back to 2017. ECF No. 226 at ¶¶ 71-75. While these achievements are noteworthy, they also demonstrate that Davis had ample legitimate means to support herself and had no reason to tread the path of illegality that she chose to pursue in this criminal venture.

### C. The Need to Afford Adequate Deterrence to Criminal Conduct

Under 18 U.S.C. § 3553(a)(2)(B), there is a need "to afford adequate deterrence to criminal conduct." A sanction needs to be imposed to send a signal to others who would contemplate engaging in wire fraud and aggravated identity theft. A sentence of 65 months of incarceration for this fraud scheme deters others.

General deterrence is a particularly important sentencing factor in fraud cases such as this one because it is viewed to be effective. *See United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal citations omitted) ("Because economic and fraud-based crimes 'are more rational, cool and calculated than sudden crimes of passion or opportunity,' these crimes are prime candidates for general deterrence."); *United States v. Edwards*, 595 F.3d 1004, 1021 (9th Cir. 2010) (Bea, J., concurring) ("[B]ank fraud, unlike an assault in a tavern or even domestic abuse, tends to be a planned, deliberate crime, which allows plenty of time for reflection, calculation of the odds of success or failure, and the ultimate decision."). The deliberate nature of fraud often renders it more difficult to uncover, since individuals engaged in fraud take affirmative steps to conceal their identities and conduct.

The pandemic led to a surge in identity theft and fraud against government programs in 2020 and thereafter, resulting in an estimate of hundreds of billions of total losses.[1] Despite its

---

[1] *See* Richard Lardner et al., The Great Grift: How billions in COVID-19 relief aid was stolen or wasted, Associated Press, June 12, 2023, online available: https://apnews.com/article/pandemic-fraud-waste-billions-small-business-labor-fb1d9a9eb24857efbe4611344311ae78  (last accessed Dec. 10, 2025).

best efforts, law enforcement will be unable to catch and convict all the opportunistic fraudsters who pilfered taxpayer money during the pandemic. This case presents a worthwhile opportunity for the Court to impose a sentence that will grab the attention of those who may be considering similar crimes.

### D. The Need to Avoid Unwarranted Sentencing Disparities

Under 18 U.S.C. § 3553(a)(6), there is a need to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." At this point, two co-defendants, Woods and Devante Smith ("Smith") have been sentenced for their respective roles in the conspiracy.

On January 13, 2025, Smith entered a plea of guilty to Conspiracy to Commit Wire Fraud and Aggravated Identity Theft. ECF No. 153. While Smith's calculated offense level was 18, his Criminal History Category was III, which resulted in an advisory guidelines range of 33-41 months incarceration, followed by the 2-year mandatory minimum consecutive period of incarceration for aggravated identity theft. ECF No. 157 at 9-10. The government also notes that Smith's conviction for the illegal possession of a firearm occurred while on supervision for his charges in this case. Accordingly, on March 17, 2025, this Court sentenced Smith to a total term of imprisonment of 57 months. ECF No. 168.

On November 7, 2024, Woods entered a plea of guilty to Conspiracy to Commit Wire Fraud and Aggravated Identity Theft. Similar to Davis, Woods also had an offense level of 24, a Criminal History Category of I, and received a two-level enhancement for her role as an organizer or leader of criminal activity. In the government's sentencing letter for Woods, it recommended a sentence of 81 months of incarceration. On April 24, 2025, this Court sentenced Woods to a total term of 74 months imprisonment. ECF No. 176. The Government's

recommendation is appropriately calibrated to avoid unwanted sentencing disparities among the defendants in this case.

### V. Restitution Request

Pursuant to 18 U.S.C. § 3663A and U.S.S.G. § 5E1.1, restitution shall be ordered in this case. As such, the United States respectfully requests that an Order of Restitution be entered, as part of the Defendant's sentence in this matter, in the total amount of $3,296,725, to be joint and several with any co-defendants. This amount is reflected in the plea agreement. ECF No. 197 at 7. The government will provide contact information for the payment of restitution to the Courtroom Deputy via a separate document.

### VI. Forfeiture

The government also seeks a forfeiture money judgment, equal to the value of the property derived from, or otherwise involved in, the offenses. On November 20, 2025, the government filed a preliminary order of forfeiture in the amount of $90,860 and this Court granted that order on the same day. ECF Nos. 234-235. This is the amount reflected in the plea agreement statement of facts, relating to ATM withdrawals by Davis that were confirmed by photograph or video. ECF No. 197 at 15.

### VII. Conclusion

For the reasons set forth above, the government respectfully submits that 65 months of incarceration and 3 years of supervised release is a reasonable sentence, and is sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a)(2).

Respectfully Submitted,

Kelly O. Hayes
United States Attorney

*John D'Amico* (Digitally signed by JOHN D'AMICO, Date: 2025.12.10 12:33:54 -05'00')

John M. D'Amico
Assistant United States Attorney
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
410-759-0860
John.D'Amico@usdoj.gov